UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION


UNITED STATES OF AMERICA,    )
    )
            VS.         )    4:05-CR-31-1H
    )
SHERWOOD WATSON CARRAWAY    )
            DEFENDANT.    )
_____)


SENTENCE HEARING
NOVEMBER 8, 2005
BEFORE THE HONORABLE MALCOLM J. HOWARD
U. S. DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:

MR. THOMAS MURPHY
ASST. UNITED STATES ATTORNEY
310 NEW BERN AVENUE
RALEIGH, NC 27601

FOR THE DEFENDANT:

MR. JAMES AYERS
P.O. BOX 1544
NEW BERN, NC 28563




COURT REPORTER: EDITH L. THOMPSON
STENOMASK REPORTER

15        MR. CARRAWAY:  Yes, sir.

16        THE COURT:  Mr. U.S. Attorney, did the government

1          MR. AYERS:  Your Honor, in light of the fact that a

2     5K motion has been filed, we do not wish to be heard on those

3     presently.  Your Honor, I would ask that Your Honor give

4     consideration to the motion at the appropriate time.

5          THE COURT:  Thank you, Mr. Ayers.  The Court will

6     allow the withdrawal of the objection of the defendant, and

7     deny the objections for the reasons stated by the probation

8     officer.

9          Does the United States have any objections to the

10    Presentence Report?

11         MR. MURPHY:  No, Your Honor.

12         THE COURT:  Then moving to the guidelines for the

13    offense of dealing with firearms without a license, the Court

14    would tentatively find that Mr. Carraway's offense level is

15    15, and his criminal history category is I.  The custody

16    range is 18 to 24 months.  He's not eligible for a

17    probationary sentence.  The supervised release term is two

18    three years.  The fine range is $4,000 to $40,000.

19    Restitution is not an issue and the special assessment is

20    $100.  Are there any objections to those ranges, Mr. Ayers?

21         MR. AYERS:  No, Your Honor.

22         THE COURT:  Mr. Murphy?

23         MR. MURPHY:  No, Your Honor.

24         THE COURT:  Then I find that those are correct.

25         Now I am in receipt of the United States' Motion

1   pursuant to 5K1.1 for Downward Departure based upon the

2   substantial assistance to the government of Mr. Carraway.

3   I'll hear you on that motion, Mr. Murphy.

4           MR. MURPHY:  Your Honor, the government's evidence

5   would be that both before and after the defendant was

6   indicted, but mostly after the defendant was indicted, he

7   provided certain information to the government, specifically

8   to the ATF, Mr. Corpening, that other people were involved in

9   the illegal sale of firearms, specifically one other person.

10  The government has developed a case against this other person

11  and is proceeding to indict him at this point.

12          But the defendant did provide certain other

13  information to the government that was not helpful, although

14  Mr. Carraway's level of enthusiasm, no doubt spurred on by

15  Mr. Ayers, was quite enthusiastic.  He made many offers which

16  we found to be unworkable but he was very much willing.

17  However, the bottom line is that Mr. Carraway has assisted in

18  the prosecution of one other person.

19          The government is looking at a recommendation, if

20  the Court wants one?

21          THE COURT:  First off, how many times has he been

22  interviewed by your agency?  Multiple times?

23          MR. MURPHY:  About a dozen times in person and by

24  phone.

25          THE COURT:  The Court finds there's a basis in law

1  and fact and hereby grants the motion, hereby taking off the

2  guidelines.  Now Mr. Murphy, will the United States be making

3  a recommendation as to the degree of departure?

4          MR. MURPHY:  The government would like to make a

5  recommendation but the government would like to put that

6  recommendation into a context.

7          THE COURT:  That means you want to make a big

8  speech.  That reminds me the Ten Commandments contained 297

9  words; the Bill of Rights 463 words.  A recent federal

10  directive written by some of your fellow lawyers regulating

11  the price of cabbage in America contained 26,911 words.  Now

12  how many words have I got to hear from you on what it is

13  you're going to recommend?

14          MR. MURPHY:  I think somewhere between cabbage and

15  the Bill of Rights.

16          THE COURT:  I would hope you would be closer to the

17  Bill of Rights.  Let's go.

18          MR. MURPHY:  Defendant had a corporation that was

19  incorporated in the State of North Carolina according to the

20  Secretary of State in 1993 for the purpose of setting up gun

21  shows.  For over 10 years -- at least 10 years -- the

22  defendant was involved in the sale of guns -- not personally

23  but he was setting up these shows all over the state,

24  including Greenville.  During that period of time, defendant

25  applied for and was granted a federal firearm license.  He

Case 4:05-cr-00031-H  Document 18  Filed 06/13/16  Page 4 of 21

1  was granted a license as a curio and -- I take it back.  I'm

2  sorry.  He had never had a license even though he was in this

3  business of setting up these gun shows.  During that time he

4  was well aware of the fact that you had to have a license.

5       When he was finally apprehended in late '93 and

6  early '94, he had sold six different times to undercover

7  agents almost a dozen guns -- in excess of a dozen guns.

8  They went to his house and found his personal collection

9  which he said was a just a collection of 40 guns.  But he

10  identified seven others that he said were for sale.  Mr.

11  Carraway is and has been in the business of selling guns.

12  Why he didn't step up to the plate and just get a federal

13  firearms license is a mystery.

14       However, because of his history of selling guns and

15  being involved in the sale of guns, it is the government's

16  belief that Mr. Carraway needs something to focus his

17  attention on, like jail.  The government would make a 40

18  percent reduction request, putting the defendant somewhere in

19  the range of seven months.

20       THE COURT:  Thank you, Mr. Murphy, I understand

21  your position.  Now Mr. Ayers, I am familiar with Mr.

22  Carraway to the extent his background is contained in the

23  Presentence Report.  He's 48.  He's a high school graduate.

24  He's from the Maury area.  He has two children.  As stated by

25  the United States in its recommendation process, I'm aware

1  that he's been in the setting up firearms shows for I assume

2  legitimately for more than 14 years.  But there is a

3  requirement for one who deals in those under the federal

4  statutes to have a license.

5       Now his criminal history is non-existent.  He had

6  one offense 17 years ago of driving left of center in Pamlico

7  County, and that's about it.  His work record seems

8  reasonable.

9       Now you have caused to be delivered just a host of

10  letters: a letter from the sheriff down in Craven County

11  saying he's his good friend.  You've got a letter from

12  Congressman Walter Jones.  You've got another letter from the

13  sheriff in Lenoir County, well, Major Ricky Pierson; from

14  Paul Dial in the Army Reserve; from Dale Barker, a lawyer

15  there in New Bern; Billie Danford -- is that the same guy who

16  used to be sheriff here in Pitt County?

17       MR. AYERS:  Yes, Your Honor.

18       THE COURT:  Lester Gosnell, who is in the Lenoir

19  County Sheriff's Office for 30 years; Alan Piner in

20  Wilmington; from his wife, Dalphia Carraway; from Lisa

21  Carraway, his daughter; from Amber Carraway, his daughter;

22  from Jeff Thompson; from Michael Soward, from Bill Kazia of

23  Indian Trail; from Charles Alred; from Marcus Zimmerman,

24  Brian Thomas; Alan Liabel; Joseph Bryan in Wallace; Frances

25  Ipock who is his wife's mama; from John Wilkes in Rocky

FORM C-100  LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1    Mount; from Mel Rich.  You've got a bunch of them.

2          His guideline because he has no criminal history is

3    just 18 to 24 months.  Now you've got a motion by the United

4    States that recommended a 40-percent cut.  I've never seen

5    them go above 60.  What should I do and why?

6          MR. AYERS:  Your Honor, when I spoke to Mr. Murphy

7    about the case, I told him that I would be asking the

8    court to impose a sentence of probation.  I have been in

9    front of this Court for many, many years and I have never had

10   the opportunity to do that and stand here straight-faced with

11   the Court, and I do that today for a number of reasons.

12          First, Mr. Carraway I believe was approached by the

13   ATF in 2003, not 1993.  So I don't want to give you the idea

14   that this had been going on for 10 or 15 years.  I kind of

15   got that impression.  But the contact with the government has

16   been recently.  He has been operating the gun show.  There is

17   nothing illegal or improper about that and he has continued

18   to do that, Your Honor, without any problems with Mr.

19   Corpening, ATF or probation.  No problems over the last five,

20   six months while he was working on this trying to get it

21   ironed out.

22          The letters were submitted because oftentimes I

23   find that if I get you the letters ahead of time, they can

24   give you a better idea than me about trying to convince the

25   Court that my client is a good fellow who works and is a

1  productive member of society.

2          One of the other reasons, Judge, on any given day

3  in Pamlico County you can go down there and find people horse

4  trading guns. It's been going on for hundreds of years. The

5  difficulty with this case and the only reason we're here

6  today is because there is a promotion from a business factor

7  involved in it that makes it different. Now people go to the

8  shows and sell guns and do certain things. People do it out

9  on their porch with their in-laws, their nephews and

10 neighbors and that happens regularly. It's happening today I

11 can almost assure the Court because I've lived in Pamlico

12 County and I know most of the people down there and that

13 happens and I don't think there's anything illegal about it

14 at all.

15         He was clearly a collector and I made the objection

16 because I wanted to make sure the Court knew regardless of

17 the motion that he was a collector and at the time they came

18 to see him he had in excess of 40 guns and other then this

19 happening during the course --

20         THE COURT: How many people do you know that have

21 more than 40 guns?

22         MR. AYERS: There are a couple here in the

23 courtroom I imagine.

24         THE COURT: Do you have more than 40 guns?

25         MR. AYERS: No.

1      THE COURT:  You're a fisher person, aren't you?

2  You don't hunt.

3      MR. AYERS:  No, I like hunting turkeys and all that

4  stuff, too.  I can't get a grip on the law.

5      THE COURT:  Can't get a grip on who?

6      MR. AYERS:  A grip on the laws of turkeys and

7  birds.  I just keep them in the safe zone.  But everybody

8  around here hunts, has guns, and when the Court is

9  considering our request I want the Court to keep in mind that

10 he lost the guns that he sold and forfeited, which is fine

11 and we have no problem with that at all.  He's lost basically

12 his ability to engage in his hobby, although he has others,

13 but he's lost his collection.  He had to give it to his

14 daughter and can't possess it.  He's basically lost his

15 ability to hunt unless he's proficient with a bow, which is a

16 whole ballgame different than hunting with firearms.

17      Also he has his business which is separate, but he

18 can't sell guns.  He knows that now.  He can't even possess

19 them and he's been around them at all the shows for this last

20 year and has not touched or possessed a single firearm and

21 that ought to give the Court some indication of the type

22 person you're dealing with.

23      THE COURT:  How are you going to answer the fact

24 that this man had been involved for 14 years?  He knew that

25 you had to have a license to deal guns and he was dealing

1   just as much as some of those people who had a license.

2           MR. AYERS:  If you read the statute, it's not that

3   clear; you can sell firearms without a license so it's not as

4   clear as I believe the government would like for it to be.

5   The statute could be made more clear.  Like I told the Court,

6   Your Honor, I do believe that if we were on our porch and he

7   had sold these to a friend of his or two or three or four, I

8   don't believe this case would be successful, and probably

9   would not have brought this case but for the business factor

10  in that there is a promotion of a gun show and a business

11  going on.

12          That is where mistaken judgment came into play.  I

13  wish I could go back and erase that and if Mr. Carraway had

14  asked me I would have said I'm sure you can dispose of your

15  collection and dispose of it in a manner that allows you to

16  increase it but you can't do that at a gun show because it

17  appears that you're in business, doing it for profit.  That

18  is the difficulty of the statute in my opinion, Your Honor.

19          But regardless of the fact that he sold some guns,

20  I think the most important thing is that he's worked his

21  whole life and you can tell from the letter from his wife

22  that he's an engaged husband and father.  He's been married

23  for 30 years and I've never been able to tell the Court that;

24  I haven't even been up here, Your Honor, with an individual

25  who has been gainfully employed.

FORM C-100  LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1          THE COURT:  Now listen to this.  18 U.S. Code

2    922(a)(1)(A).  "It shall be unlawful for any person except a

3    licensed importer, licensed manufacturer or licensed dealer

4    to engage in the business of importing, manufacturing or

5    dealing in firearms."

6          Now you just said that was so ambiguous, and it's

7    just as clear as the nose on your face, Mr. Ayers.

8          MR. AYERS:  Judge, I think the statute continues

9    there with an exception when you're a collector.  Certain

10   folks in Congress, it's my understanding, collect firearms as

11   well, Your Honor, and there's a reason for the exception.

12   The target is not the person who is trying to collect guns

13   and firearms and things of that nature; it's to keep guns out

14   of the hands of drug dealers which is a good and justifiable

15   purpose.  But there is an exception there.

16         The difficulty with this case is when you are not

17   selling guns out of your collection, even if it's regular and

18   you're increasing; it's that you're at the gun show and it

19   creates the appearance of impropriety, for lack of a better

20   word, with people from the public and people complain about

21   it and then we wind up having to have this discussion with

22   the Court.

23         But the business of promoting firearms, which is a

24   perfectly legitimate business and there's nothing wrong with

25   owning them presently, and hopefully it will stay that way

FORM C-100  LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1  and I think a good indication of that is that he's been able

2  to continue to do that.  Based upon that and the fact that he

3  has never been here, that begs the question of why didn't

4  somebody just go and say he shouldn't do that.  Then you get

5  the real test: does he continue to do it even though he's

6  been warmed not to do it or not.  We don't have that in this

7  case.  If I were in another court down in Craven County, I'd

8  be asking for a judge to continue judgment because he has

9  never had run ins with the law.

10       THE COURT:  Well, the judge in Craven County

11  wouldn't be faced with the United States Sentencing

12  Guidelines.

13       MR. AYERS:  That's the difference and that's why

14  I'm standing here asking for probation instead of the

15  alternative.

16       THE COURT:  You are standing there asking for about

17  a 90-percent reduction in the sentence while the United

18  States made a 40 percent recommendation.

19       MR. AYERS:  And I told Mr. Murphy I was going to

20  have to disagree with him.  He knew that I was going to be

21  asking the Court to do this, and he told me that he was going

22  to stand on his recommendation and that's fine.  The other

23  point of the objection, Your Honor --

24       THE COURT:  I understand but let's go back.  You

25  got that case in the record or something.  I don't know what

1  you're talking about.  You're talking about he was in this

2  business for 14 years and he did this and maybe there's some

3  confusion over he was a collector and had a right not to sell

4  or to sell or whatever.  What is the compelling reason not to

5  give him the same treatment everyone else gets when charged

6  with this same offense?

7          MR. AYERS:  Well, I think that the Court should

8  have to judge the individual, and this particular individual

9  came in early and cooperated without me as his lawyer and

10 then I advised him to continue and he continues.  He is

11 paying  taxes, and he's buying his home, and he's stayed

12 married and he has provided for his children.  He's done all

13 those things that I never get to tell the Court that someone

14 does and that we want people in society to do.

15         I would suggest to the Court that if he's placed on

16 probation that he'll continue right along doing that, and the

17 best example of that is the last year.  He has done a good

18 job.  He has had this weighing over his head.  He and his

19 wife are still together and his daughters appear here in the

20 courtroom that he provides for, and if there was ever a case

21 that I think probation is a legitimate request, Your Honor,

22 this is it.  I may not ever get another one, and as the Court

23 can tell I feel strongly about it.

24         I think he's done a good job his whole life and he

25 has made a mistake and that mistake has cost him.  He's

Case 4:05-cr-00031-H   Document 18   Filed 06/13/18   Page 13 of 21

FORM C 100  LASER  REPORTERS PAPER & MFG. CO  800/626-6313

1  subject to being fined by this court.  When someone comes in

2  here and they're non-violent, no drugs, no drinking, no

3  alcohol, no problems, I think they deserve the benefit of the

4  doubt and that's not to suggest that if he does something

5  wrong that the Court cannot exact punishment.  For most

6  people who have never been in front of a court, not just this

7  court, when you come in here it's a heavy burden to bear and

8  I know it's a heavy burden to have to sentence people but for

9  the ordinary person who is not involved in criminal law on a

10 regular basis, this is a big deal.

11         That's the basis of my request, Your Honor, and I

12 think it's a fair request and I think he deserves the benefit

13 of the doubt and the opportunity to prove me right and him

14 right and we request it.  Thank you.

15         MR. MURPHY:  Your Honor, can I respond briefly?

16         THE COURT:  I'll come back to you.  We have a

17 procedure here.  Mr. Carraway, do you have anything you

18 desire to tell me?

19         MR. CARRAWAY:  Yes, sir.  I'd like to apologize for

20 being here.  What I did wrong, I didn't intentionally do

21 wrong.  I thought I had the right to buy, sell and trade to

22 enhance my collection to a certain degree.  He said something

23 about seven guns that I had at the house for sale; three of

24 them seven I had been collecting.  One was 30:30 Jones Spoke,

25 one was a Mini 14 and the other was an AR-7 and I've never

FORM C-100  LASER REPORTERS PAPER & MFG. CO.  800-626-6513

1    had none.  I had two previous 14s before.  I just love guns

2    and I collect.  In fact, I've got 42 of them in my safe or

3    had 42 of them.  I think that proves that I'm a collector.  I

4    apologize to the Court.

5            THE COURT:  You sold basically, I believe the

6    record shows, at least 13 guns to undercover cops during this

7    investigation; right?

8            MR. CARRAWAY:  Yes, sir.

9            THE COURT:  Now I'm not going to ask you how many

10   because I don't even want to know but over time you sold a

11   lot of guns to people.  You know anyone that goes to a

12   regular licensed dealer has to fill out all these forms:

13   whether or not they're a felon, whether or not they've been

14   convicted of domestic violence and all that kind of stuff;

15   right?  You didn't have such a thing, you just sold to him if

16   the man had the money and you were willing to sell and he was

17   willing to buy; right?

18           MR. CARRAWAY:  Not quite.

19           THE COURT:  Okay, what did you do?

20           MR. CARRAWAY:  Most times, if I sold a long gun I

21   got their name, license number, social security number and

22   stuff like that.

23           THE COURT:  What did you do with that?

24           MR. CARRAWAY:  I kept it for a while, kept it in my

25   records.

FORM C-100  LASER REPORTERS PAPER & MFG. CO.  800-626-6313

1      THE COURT:  If you sold a long gun.  What if you

2 sold a pistol?

3      MR. CARRAWAY:  Most of the time I required a pistol

4 permit.  State law -- to the understanding I know now, state

5 law requires that the individual who sells a handgun, it's

6 best for him to get a state permit for the other individual.

7      THE COURT:  Well, if he's a licensed gun dealer, he

8 has to have it to make the sale; correct?

9      MR. CARRAWAY:  He has to have it?

10      THE COURT:  Well, don't you reckon that's the

11 reason those laws exist?  Not necessarily to damper the

12 freedom of having a gun in one's home but at least to check

13 that those who are buying them aren't criminals of some kind.

14 Do you think that's a good law or a bad law?

15      MR. CARRAWAY:  As an individual, if you get a

16 permit from another person and you sell a handgun, that's the

17 same permit a dealer would get.  So if he has a permit, that

18 means he's been checked out by the sheriff's department

19 already.

20      THE COURT:  All right, anything else you want to

21 tell me?

22      MR. CARRAWAY:  I think John's a good man.  I think

23 we work good together, and I'm sorry to be here.

24      THE COURT:  Thank you.  Mr. United States Attorney.

25      MR. MURPHY:  I don't want to beat this to death but

Case 4:05-cr-00031-H  Document 18  Filed 06/13/18  Page 16 of 21

FORM L-106 - LASER REPORTERS PAPER & MFG. CO.  800-626-6313

1  the defendant was charged with dealing or doing a business

2  without a license and during the six times, which is on page

3  four of the PSR, there's one, two, three, four, five of the

4  six times the defendant sold handguns in various counties and

5  everyone of those times, whether he's a firearm dealer or

6  not, even a collector for a handgun would have to have a

7  permit, and this man has been in this business now for over

8  15 years or something like that.  He wants this Court to

9  believe ah, shucks, judge, I didn't know that.

10       He takes down people's names and addresses and that

11  kind of thing for selling long guns but then he gives it

12  away.  Why is he doing that?  Some of these guns were sold to

13  agents that were from South Carolina.  They told him they

14  were from South Carolina.  It is illegal to sell guns out of

15  state.  There were buyers from out of state.  He was told

16  that and he did it anyway.  On several of these things and

17  several of these sales at different times, he mentioned to

18  the undercover agents, "you're not trying to set me up, are

19  you?  You're not the man, are you," which shows that the

20  defendant knows what he's doing is illegal.

21       The government is not so concerned about this man

22  getting a 40 percent cut or a 90 percent cut or even going to

23  jail at all, we don't want this man selling guns anymore.  He

24  is a gun dealer.  He needs a license.  He can't get one now.

25  The government would like a judgment fashioned in such a way

1   that this man can't do what he so desperately wants to do,

2   deal in guns.  He has no intention of giving up the gun show.

3   He expects to run these things on and on and on.  As long as

4   this man is in the proximity of guns, he is going to be a

5   dealer and you can bet that if this man comes back in front

6   of this court again, we're going to be arguing over what is

7   the definition of constructive possession of a handgun or any

8   firearm.

9           THE COURT:  Thank you, Mr. Murphy.  I've made up my

10  mind. You may stand, Mr. Carrraway.

11          I adopt the findings in the Presentence Report as

12  credible and reliable and based on those findings, I've

13  calculated the imprisonment range prescribed by the advisory

14  sentencing guidelines.  I've considered that range, as well

15  as the other relevant factors set forth in 18 U.S. Code

16  3553(a).

17          Pursuant to the Sentencing Reform Act of 1984, as

18  amended by the Supreme Court decision in <u>United States versus</u>

19  <u>Booker</u>, it is the judgment of the Court that the defendant,

20  Sherwood Watson Carraway, is hereby committed to the custody

21  of the United States Bureau of Prisons to be imprisoned for a

22  term of three months.

23          Pursuant to the plea agreement, Counts Two, Three,

24  Four, Five and Six are dismissed.

25          Upon release from imprisonment, you'll be placed on

FORM C-130 · LASER REPORTERS PAPER & MFG. CO  800-626-6313

1  supervised release for a term of two years.

2          Within 72 hours of release from custody, you will

3  report in person to the probation office in the district to

4  which you're released and while on release, you shall not

5  commit another federal, state or local crime, shall not

6  illegally possess a controlled substance, a firearm or

7  destructive device, and shall comply with the standard and

8  the following additional conditions.

9          1.  You will consent to a warrantless search by a

10  U.S. Probation Officer or at his request any law enforcement

11  officer of your person and premises, including any vehicle,

12  to determine compliance.

13          2.  You will cooperate in the collection of DNA.

14          3.  The drug testing condition required under

15  18(3608) is suspended based upon the Court's determination

16  that you pose low risk.

17          4.  It is ordered that you pay the special

18  assessment of $100, which is due and payable immediately.

19          5.  Although provisions of the Victim and Witness

20  Protection Act are applicable, as there are no identifiable

21  victims, there is no restitution.

22          6.  It is ordered that you shall pay to the United

23  States a fine in the amount of $2,500 which amount shall bear

24  lawful interest at a perscribed rate.  This is due and

25  payable immediately.

FORM L-100 · LASER REPORTERS PAPER & MFG. CO.  800-626-6313

1          That concludes the statement of the sentence.  Mr.

2   Probation Officer, do you know of any required changes to

3   further comply with the sentencing laws?

4          MR. MEEKS:  No, Your Honor.

5          THE COURT:  Mr. Ayers, do you have any remaining

6   legal objections to the sentence as stated by the Court?

7          MR. AYERS:  No, Your Honor.  We would ask that he

8   be allowed to self report.

9          THE COURT:  Mr. U.S. Attorney?

10          MR. MURPHY:  No objection.

11          THE COURT:  Mr. Ayers, I respectfully decline to

12   accept that recommendation.  There comes a time in these

13   matters -- this has been going on.  I hereby remand Mr.

14   Carraway to the custody of the United States Marshal for

15   execution of the sentence.

16          MR. AYERS:  Thank you, Your Honor.

17          THE COURT:  Marshal, court will be in recess for 10

18   minutes.

19

20

21

22

23

24

25                    END OF TRANSCRIPT

1                          CERTIFICATE

2        THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF

3    PROCEEDINGS TAKEN AT THE CRIMINAL SESSION OF UNITED STATES

4    DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE

5    PROCEEDINGS TAKEN BY ME IN STENOMASK AND TRANSCRIBED BY ME

6    PERSONALLY.

7        THIS THE 18th DAY OF June, 2018.

8

9                        /s/ Edith L. Thompson

10                       EDITH L. THOMPSON

11                       COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25